**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TEREIK BELMER.

    Plaintiff,                                    CASE NO: TBD

v.

EZPAWN FLORIDA, INC., d/b/a VALUE
PAWN AND JEWELRY, and EZCORP, INC.

    Defendants.
_____/

**COMPLAINT**

Plaintiff, TEREIK BELMER sues the above captioned Defendants, EZPAWN FLORIDA, INC., d/b/a VALUE PAWN and JEWELRY, and EZCORP, INC. for discriminatory employment practices and unlawful retaliation in violation of 42 USC Section 1981, and in support thereof, Plaintiff states as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 as well as 29 U.S.C. §215(a)(3) because Plaintiff's claims involve federal questions under 42 USC Section 1981.

2. This Court has personal jurisdiction over this action and Defendant EZPAWN FLORIDA, INC. (hereinafter EZPFL) pursuant to Florida's Long Arm Statute F.S. § 48.193(1)(a)1 because Defendant EZPFL is permanently and regularly conducting business within Florida and this District with fixed location retail stores, including in Tampa, Florida. At

all times material, EZPFL maintains minimum contacts within this district and should reasonably expect to be hailed into court in this district.

3.      Defendant EZPFL, upon information and belief is a wholly owned subsidiary of Defendant EZCORP, INC., and both companies share principal corporate offices located at 2500 Bee Cave Road, Bldg. 1, Suite 200, Rollingwood, TX 78746, and share as well one or more officers and directors.

4.      Defendant EZCORP, INC. is a publicly traded corporation (stock symbol EZPW), (hereinafter referred to as EZPW), which upon information and belief, owns, manages, and controls EZPFL from its corporate office in Rollingwood, Texas as a common and unified business enterprise.

5.      Both EZPW and EZPFL may be served by their registered agent in Florida, C T CORPORATION SYSTEM, 1200 SOUTH PINE ISLAND ROAD, PLANTATION, FL 33324.

6.      Defendant EZPW admits that it operates and controls EZPFL, and handles all recruiting and job posting from its website, and lists Value Pawn and Jewelry as one of its "brands".

7.      Venue is proper to this Court pursuant to 28 U.S.C. 1391(b) because the acts complained of herein took place in Hillsborough County, FL.

8.      Both Defendants are employers with greater than 15 employees and are employers subject to 42 USC § 1981.

9.      Defendants combined to jointly operate, manage, direct, and control the work of Plaintiff, including all decisions on hiring, firing and precluding his advancement or promotion.

10. Defendant EZPW operates pawn shops under various "brands" and fictitious names across the United States employing over 7000 team members and includes all the employees of EZPFL.

11. Defendant EZPW operates, controls and handles all human resources matters as a single corporation; in fact Plaintiff's termination notice was written on an Ezcorp disciplinary form. *See* **Exhibit A**.

12. At all times relevant to this action, Plaintiff Belmer resided in this district and was an employee of Defendants in this district working from several stores in the Tampa area.

13. Plaintiff is an African American of the black race and a protected minority in the United States of America.

14. At all times relevant to this action, Plaintiff was employed by Defendants as a "manager in training" (MGIT), which as per the company website, is the next step to being employed as a store manager.

15. Plaintiff was hired on December 28, 2017 and terminated on or about April 23, 2020.

16. At this present moment, there is a store manager opening in Kissimmee, Florida.

## GENERAL ALLEGATIONS

17. Plaintiff was employed as a MGIT beginning in December 2017.

18. Plaintiff was promised at the time of his hiring that the MGIT program was to last between three (3) and six (6) months, and after this period of time, barring any disciplinary actions, he would be considered for available store manager positions and promoted when openings arise.

19. Prior to April 23, 2020, Plaintiff had undergone annual job reviews and upon his understanding, always met expectations.

20. Plaintiff had completed all required training to become a store manager and be promoted as per company standards.

21. Meanwhile, year after year, Plaintiff watched, observed and became aware of Defendants hiring other employees into store manager positions with less experience, and otherwise being excluded from all opportunities for advancement and promotion, including but not limited to Store Manager positions.

22. The very name of his position, Store Manager in Training, and from Defendant's own website, the SMIT (store manager in training) is the direct career path to becoming a store manager. See https://apply.jobappnetwork.com/ezcorp/en. (accessed June 23, 2020).

23. Prior to April 23, 2020, Defendants had NEVER offered Plaintiff any management positions, nor ever permitted him to interview for one (1) single store manager opening.

24. Plaintiff expressed his desire to be promoted routinely and pervasively throughout his employment.

25. Defendants mislead Plaintiff and falsely stated that he would be considered and given the opportunity to interview and be considered for future store manager openings.

26. Upon information and belief, from December 2017 through April 2020, numerous store manager positions became available but Defendant never invited Plaintiff to interview nor even notified Plaintiff of all such openings.

27. For the times when Plaintiff was aware of openings for store manager positions, throughout Plaintiffs term of employment, the Defendants never hired any African Americans in the role of store manager.

28. In Florida, and primarily in the Tampa Bay area and surrounding counties, there is a complete lack of African American/black store managers.

29. Moreover, it is unheard of and rare that anyone remains in the SMIT or MGIT position for three (3) years and four (4) months without being promoted, or otherwise, being terminated if their performance is so poor.

30. The vast majority of marketing leads and all high-value marketing leads were distributed to white, non African American sales representatives.

31. In May, 2020, the company had posted 37 available manager positions, including shift managers and store managers, none of which were ever offered to Plaintiff, nor was he ever interviewed for such positions, let alone notified of management openings throughout the entire time of his employment.

32. Plaintiff Belmer had an unblemished performance history, with only one (1) incident related to a customer complaint in October 2019, which was dismissed and supposedly removed from any inclusion in Mr. Belmer's personnel file.

33. Regardless, this incident, by Defendants' own representation, had no impact on the decision to terminate Mr. Belmer on April 23, 2020.

34. On or about October 15, 2019, Mr. Belmer spoke to Wanda Cooper in Human Resources about perceived and observed race discrimination against the district manager, Joseph Heinrich.

35. Belmer mentioned to Ms. Cooper that he noticed all the managers Mr. Heinrich promoted have been Caucasian, including some employees who even started working for the company after Mr. Belmer's time.

36. Belmer requested Ms. Cooper provide him an explanation as to why he has never been promoted and why Caucasian males with less employment history and experience have been promoted to store manager positions; however, Ms. Cooper gave a patently FALSE excuse, representing that there are or were simply no openings for manager positions.

37. While Mr. Belmer was working at Store B0205, two (2) female employees, Jesenia and Sarah, spoke to him in confidence to report that on April 14, their store manager James had been making sexual remarks to them about homosexual men which made them uncomfortable and offended them. They reported that James was going through a phone that a customer left behind in the pawn shop. James then located a picture of a transgender man the employees stated James brought the phone to them to show them a picture of a naked transgender man. James said: "damn he has a big dick".

38. On April 15, Mr. Belmer contacted the ethics hotline and reported incidents of a hostile work environment and sexual harassment, as well as the racial discriminatory hiring and advancement practices after years of never being considered for any management position.

39. Belmer also made a complaint to the ethics hotline.

40. Ms. Cooper called Mr. Belmer on April 16, but she did not mention anything about the very complaints he reported.

41. Mr. Belmer asked if she would be discussing his prior complaints of racial discrimination and being passed over for advancement, and the reported incidents, but Ms. Cooper again refused to discuss these matters with him.

42. Wanda Cooper falsely represented to Plaintiff that there were no positions available when he asked about all the prior promotions, and complained that none of them were black or African American.

43. When Mr. Belmer then confronted Ms. Cooper about all the promotions to management he was personally aware of and that none of them were of black people, she responded that he was "off topic" and to call the Company ethics hotline.

44. Defendants ignored and swept under the rug his complaints about discriminatory employment practices against black and African Americans, and what he perceived to be discriminatory actions against him, as well as others.

45. Defendants intentionally failed and refused to conduct any real investigation into any of the complaints by Belmer of disrimination and discriminatory employment practices.

46. Plaintiff believed that the District Manager Joseph Heinrich and his direct store manager boss, Mr. Kondakor had a bias against African Americans and refused to promote or hire African Americans as store managers.

47. Heinrich also attempted to coerce a former employee, Sergio Moorjohn, to put in writing a derogatory statement and complaint about Mr. Belmer in order to cause him to be fired. However, Mr. Moorjohn, who had actually been reported by Mr. Belmer to the company for stealing, refused to turn on Mr. Belmer.

48. Then on April 23, Mr. Belmer was called into an office meeting with the store manager, Richard Kondokor and a new or temporary District Manager (DM), Chris Gudice (sp), as Mr. Heirnich was either away or out for unknown reasons.

49. Defendants gave Plaintiff a termination notice, contending that he failed to perform his required job duties on April 15 and 16 of 2020.

50. Plaintiff protested that he was not working on those days and the company records would clearly establish this to be true. Thus, it would be impossible for Plaintiff to have committed the charged offenses.

51. Plaintiff requested District Manager Gudice (sp) and Mr. Kondakor review their records and confirm that he was not working on these days, but Defendants refused.

52. Then, they immediately asked Plaintiff to hand back to them the written disciplinary notice to avoid him having evidence of the false allegations and falsified reasons for his termination.

53. Having been caught in a lie and presenting Plaintiff with a clearly falsified termination notice, they sought to prevent Palintiff from keeping the evidence and sought to restrain him from leaving the building until he returned the false written termination notice.

54. An argument ensued and law enforcement was called. Only then was Plaintiff permitted to leave with the form.

55. Defendants wrote up Plaintiff under false reasons to terminate his employment in retaliation for his complaints to Human Resources about discriminatory employment practices and discriminatory actions against him.

56. Mr. Belmer then refused to sign the write up form and refused to return it back to them. As a result they called law enforcement on him and told him he was not leaving the room and building without returning the form to them.

57. Plaintiff engaged in protected activity when he complained about discriminatory employment practices involving himself by Defendants' managers because of his race (black and being African American), and the perceived discriminatory employment practices against blacks and African Americans in general.

## COUNT I
## VIOLATION OF 29 USC § 1981

58. Plaintiff readopts and re-alleges the allegations set forth in paragraphs 1 through 56 as if fully set forth herein, and further alleges:

59. Plaintiff was subjected to discriminatory employment practices, including actions to intentionally and willfully hold him back from promotion and to exclude him from all future management opportunities and advancement opportunities because of his race, that being black and an African American.

60. Defendant's District Manager, Heinrich, store Manager Kondakar, and the additional DM Chirs Judice (Sp), all were motivated to terminate Plaintiff based upon discriminatory reasons and their dislike of blacks and African Americans, and favoring Caucasians and other races over blacks in their employment decisions.

61. After years of working as a store manager in training and meeting company performance reviews, Plaintiff was more than qualified and entitled to be promoted to a store manager position but Defendants willfully and intentionally kept him from advancement because of his race.

62. Defendants also used race as a factor in their hiring and promotion practices.

63. Defendants' actions were discriminatory, and Defendants used Plaintiff's race as factors in the decision to terminate him under false pretenses.

64. Defendants' reasons for termination of Plaintiff's employment were a pretext for unlawful discriminatory actions taken against him.

65. Defendants' actions were also discriminatory in that Defendants treated him differently than Caucasian employees or other races, who served in the store manager in training positions, as others in such positions were promoted and given opportunities to interview and be considered for store manager position openings.

66. The actions of keeping Plaintiff in a manager in training position and refusing to promote him or even consider him for open manager positions because of his race is willful, oppressive, malicious, and outrageous conduct by Defendants.

67. The stated reasons for terminating Plaintiff's employment were false, fraudulent, willful, intentional, and a pretext for unlawful discriminatory factors and motivations.

68. Defendants' violated 42 USC § 1981 by refusing and failing to provide him equal employment opportunities and by treating him differently in employment decisions, including promotion and termination, because of his race and status as a black person and African American.

69. As a direct result of Defendants' unlawful, discriminatory actions against Plaintiff, he has suffered: loss of income, humiliation, embarrassment, harm to his reputation, and mental anguish.

## COUNT II
## UNLAWFUL RETALIATION IN VIOLATION OF 42 USC § 1981

70. Plaintiff adopts and realleges paragraphs 1-56 as if fully set forth herein.

71. Plaintiff was subjected to discriminatory employment practices, including actions to intentionally and willfully hold him back from promotion and to exclude him from all future management opportunities and advance opportunities because of his race, that of being black and an African American.

72. Defendants' District Manager, Heinrich, store Manager Kondakar, and the additional District Manager Chris Judice (Sp), all were motivated to terminate Plaintiff based upon discriminatory reasons and their dislike of blacks and African Americans, and favoring Caucasians and other races and ethnicities over blacks in their employment decisions.

73. After years of working as a store manager in training, and meeting company performance reviews, Plaintiff was more than qualified and entitled to be promoted to a store manager position but Defendants willfully and intentionally kept him from advancement because of his race.

74. Defendants also used race as a factor in their hiring and promotion practices.

75. Defendants' actions were discriminatory, and Defendants used Plaintiffs' race as factors in the decision to terminate him under false pretenses.

76. The reasons for termination of Plaintiff's employment were a pretext for unlawful dsicimiantiony actions taken against him.

77. Defendants' actions were also discriminatory in that Defendants treated him differently than Caucasian employees or employees of other races, who served in the store

manager in training position, as others in such positions were promoted and given opportunities to interview and be considered for store manager position openings.

78. The actions of keeping Plaintiff in a manager in training position and refusing to promote him or even consider him for open manager positions because of his race is willful, oppressive, malicious, outrageous conduct by Defendants.

79. The stated reasons for terminating Plaintiffs' employment were false, fraudulent, willful, intentional, and a pretext for unlawful discriminatory factors and motivations.

80. Defendants terminated Plaintiff maliciously, willfully and intentionally because he dared complain about racism, discriminatory employment practices directed to him and to all blacks and African Americans employed by Defendants.

81. Section 1981 has been declared to prohibit retaliation as well, and is an action of intentional discrimination in violation of Section 1981.

82. Defendants violated 42 USC § 1981 by retaliating against him and terminating his employment because of his complaints of racial discimrination and discriminatory employment practices against him and all other blacks and African Americans employed by Defendants.

83. As a direct result of Defendants' unlawful, discriminatory and retaliatory actions against Plaintiff, he has suffered: loss of income, humiliation, embarrassment, harm to his reputation, and mental anguish.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for an award and judgment against the Defendants as follow:

a.  A ruling that Defendants have violated 42 USC Section 1981;

b.  A ruling that Defendants have unlawfully retaliated against Plaintiffs;

c.  An award of all compensatory damages available including: back pay in lieu of reinstatement, front pay, damages for all pain and suffering, harm to reputation, mental anguish, humiliation and embarrassment.

d.  Pre-judgment interest;

e.  Punitive damages;

f.  An order or judgment awarding reasonable attorneys' fees and costs and expenses of this litigation;

g.  That the Court finds that Defendants have acted willfully, intentionally and with reckless disregard for Plaintiffs' rights and award Punitive damages; and

h.  That the Court award any other legal and equitable relief as this Court may deem fair and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated this 26th day of June 2020.

*/s/ Mitchell L. Feldman, Esq.*
MITCHELL L. FELDMAN, ESQUIRE
Florida bar No.: 0080349
**FELDMAN LEGAL GROUP**
6940 W. Linebaugh Avenue, Suite 101
Tampa, FL 33626
Tele: (877) 946-8293 - Fax: (813) 639-9376
Email: mlf@feldmanlegal.us
Secondary: lschindler@feldmanlegal.us
*Attorney for Plaintiff*